**RECEIVED**

OCT 2 0 2015

COURT OF APPEALS
SECOND DISTRICT OF TEXAS
DEBRA SPISAK, CLERK

**FILED**
COURT OF APPEALS
SECOND DISTRICT OF TEXAS

OCT 2 0 2015

DEBRA SPISAK, CLERK

**IN THE COURT OF APPEALS**

**SECOND DISTRICT OF TEXAS FORT WORTH**

---

**CAUSE NO, 02-15-00154-CV**

---

**ELMA THOMAS, APPELLANT**

**V.**

**PETERS COLONY, APPELLE**

---

**Appeal from County Court at Law No. 2**

**Denton County, Texas**

**Trial Court Cause No. CV-2015-00793**

---

**ELMA THOMAS**

**APPELLANT**

**TELEPHONE: (469) 643-0654**

**SECONDARY TELEPHONE: (817) 323-4458**

ht_2@hotmaill.com

**PAGE 1**

APPELLANTS BRIEF

## STATEMENT OF FACTS

Appellant, Elma Thomas has been a resident at Peters Colon since 2009. Appellant signed

documents earlier this year, under the impression that she had signed a new lease. However,

because of her tenure, and trust in Management, she did not obtain a copy of the documents

she signed. According to a copy of the Appellee's Brief that was mailed to the Appellant, her

lease term began on February 1, 2014, and ended on January 31.2014. If you review the Lease

Contract (See Exhibit A), the Date of Lease Contract is February 10, 2014. In the body of the

Lease, paragraph 3, the Lease Contract Date is February 1, 2014. The Date the Lease was signed

is February 10, 2014. There are too many inconsistencies in the statements, and documents

from Peters Colony. There are inconsistencies in the dates given for Appellant to Vacate the

premises, and the Lease Date (See Exhibit A). At the top of the Lease, the Contract Date is

February 10, 2014. In Paragraph 3, the Lease Contract begins February 1, 2015. The Appellant

signed the Lease in 2014, on February 10, 2014 It also states that the **lease will automatically**

**renew month to month**, unless a 30-day written notice of termination is given, or intent to

move out. SINCE THE APPELLANT RECEIVES HOUSING ASSISTANCE,
SHE CANNOT JUST MOVE OUT WITHOUT PROPER NOTIFICATION
TO THE HOUSING AUTHORITY, OR SHE COULD LOSE HER
HOUSING, OR FORFEIT HER VOUCHER. THE TIME FRAME
BETWEEN MARCH 4 (NOTICE TO VACATE), AND MARCH 9, 2015,
IS ONLY 5 DAYS. THERE IS NO WAY THAT THE APPELLANT
COULD HAVE FOUND SOMEWHERE TO MOVE TO, AND STILL BE
IN COMPLIANCE WITH DALLAS HOUSING AUTHORITY.
ESPECIALLY, WITH NO PHONE, OR TRANSPORTATION. WHAT
HAPPENED TO THE DOCUMENTS THAT WERE SIGNED. RENT
IS STILL BEING PAID TO PETERS COLONY, AND APPELLANT
STILL RECEIVES A CHECK FOR UTILITY ASSISTANCE. IT
HAS ALMOST BEEN IMPOSSIBLE TO ACTUALLY SPEAK TO
SOMEONE AT THE HOUSING AUTHORITY, THAT ACTUALLY
HANDLES THESE VOUCHERS, AND GET A RESOLUTION
TO THIS SITUATION. HOW AS PETERS COLONY GETTING
A CHECK IF THERE'S NO LEASE?

## ARGUMENT

Both sides did not have the opportunity to present their case, because both witnesses were threatened to be held in Contempt of Court. One witness was allowed to confirm that the Appellant was indeed a Pauper, and unable to pay court cost. Because of the threat of Contempt of Court, the Appellant was afraid to call the witness back to the stand. The second witness was also threatened with Contempt of Court during the Hearing. The Judge's behavior was unprofessional, as if this was some game, while the clerk laughed at his conduct before, during, and after the Hearing was over. The Appellant asked if she could call her witnesses, and it was denied by the Judge. However, he allowed the Attorney for Peters Colony to speak, and set the Bond at $8222.00. The Hearing was only a formality, with absolutely no intention of changing his mind. His mind was made up, before he entered the courtroom. The Appellant had to act as her own Attorney, (because an Attorney was denied by the court), and answer questions, that would have been ill-advised, had an Attorney been present.

## Oral Argument

The County Court erred when it allowed testimony, and made a decision based on hearsay, which should have been inadmissible in court. The Manager, Apartment Personnel, nor the Attorney for Peters Colony was present, when any of the alleged incidences occurred. There are no police reports of anyone being threatened, or loud obnoxious behavior. However, it was stated that the police were called, for the Appellant having her music too loud. The Appellant doesn't throw parties, she lives alone. She does not deserve to lose her place to live. As a common courtesy, in living anywhere, you should always be mindful of those around you. If there was an issue/problem, Management should have spoken to both parties, in an effort to remedy the situation, and not taken one side over the other, unless she had witnessed the dispute herself.

## Oral Argument (Continued)

The JP Court (Carrollton) erred, when I awarded Attorney's Fees to Peters Colony in the amount of $600.00. An Attorney was not required at this juncture of the court proceedings. The Manager, or Leasing Agent could have represented Peters Colony in court. It was at the sole discretion of the Management to hire an Attorney. It is only at the County Court, or higher, that the Apartment has to hire an Attorney, by law, because they do not own the Apartments. Therefore, the Appellant should not be responsible for paying their Attorney's Fees.

## Issue Presented

Appellant has been a Resident of Peters Colony since early 2009. She has never not renewed hear lease. She signed documents, under the impression that she had a new lease. However, because of her relationship with the Manager, she did not obtain a copy. What happened to the documents that she signed? Five days is not sufficient for someone to move, receiving Housing Assistance. Proper notification has to be given, or the Appellant would forfeit her housing.(See Exhibit B).

## Prayer

It is the hope and prayer of the Appellant to come to a peaceful resolution, where she can maintain her place of residence. If an agreement cannot be reached, the Appellant asking to move to another Apartment Complex. It is also the Appellant's Prayer, that the Court not render judgment against the sureties (Edith Burgess and Marisol Rodriguez) on Appellant's Supersedeas Bond. There have been no damages to the Apartment before, no during these proceedings. All rent is paid through the Dallas Housing Authority. Peters Colony has not incurred any additional cost, Late Fees, etc., by the Appellant being in her Apartment.

## THE COURT SHOULD NOT AFFIRM JUDGEMENT AGAINST THE SURETY OF THE SURETY OF SUPERSEDEAS BOND.

The County Court set a Supersedeas Bond in the amount of $8222.00, of which the Appellant paid $822.00 earnest money. The justification for the bond being set at this amount, was to provide protection for the Appellee, considering the value of rent likely to accrue during the Appeal, damages which may occur as a result of the stay during the Appeal, and other damages the court may deem appropriate. However, the Appellant is on the Walker Program, which is a part of the Section 8 program, and rent is paid directly to the Apartment complex, by Dallas Housing Authority. The value of rent has not accrued during this Appeal, and there have been no damages incurred by Peters Colony before, nor during this Appeal by the Appellant. Therefore, the Appellant, nor the sureties for the Appellant (Edith Burgess and Marisol Rodriguez) should not have judgment rendered against them on the Supersedeas Bond.



TEXAS APARTMENT ASSOCIATION

**Apartment Lease Contract**



APARTMENT ASSOCIATION GREATER·DALLAS

Date of Lease Contract: **February 10, 2014**
(when this Lease Contract is filled out)

*This is a binding contract. Read carefully before signing.*

| Moving In -- General Information |

1. **PARTIES.** This Lease Contract is between *you*, the resident(s) *(list all people signing the Lease Contract)*: **Elma Thomas**

and *us*, the owner: **Peters Colony**

*(name of apartment community or title holder).* You've agreed to rent Apartment No. **6506** , at **1810 E. Peters Colony** *(street address)* in **Carrollton** *(city)*, Texas, **75007** *(zip code)* for use, as a private residence only. The terms "you" and "your" refer to all residents listed above, and a person authorized to act in the event of a sole resident's death. The terms "we," "us," and "our" refer to the owner listed above and not to property managers or anyone else. Written notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor must be executed.

2. **OCCUPANTS.** The apartment will be occupied only by you and *(list all other occupants not signing the Lease Contract)*:
**No Others**

No one else may occupy the apartment. Persons not listed above must not stay in the apartment for more than **7** consecutive days without our prior written consent, and no more than twice that many days in any one month. *If the previous space isn't filled in, two days per month is the limit.*

3. **LEASE CONTRACT TERM.** The initial term of the Lease Contract begins on the **1st** day of **February** , **2014** *(year)*, and ends at midnight the **31st** day of **January** , **2015** *(year)*. This Lease Contract will automatically renew month-to-month unless either party gives at least **30** days written notice of termination or intent to move-out as required by paragraph 37. *If the number of days isn't filled in, at least 30 days notice is required.*

4. **SECURITY DEPOSIT.** The total security deposit for all residents is $ **50.00** , due on or before the date this Lease Contract is signed. This amount *[check one]*: ☐ does or ☒ does not include an animal deposit. Any animal deposit will be stated in an animal addendum. See paragraphs 41 and 42 for security deposit return information.

5. **KEYS, FURNITURE AND AFFIDAVIT OF MOVE-OUT.** You will be provided **1** apartment key(s), **1** mailbox key(s), and other access devices for _____. Any resident, occupant, or spouse who, according to a remaining resident's affidavit, has permanently moved out or is under court order to not enter the apartment, is (at our option) no longer entitled to occupancy, keys, or other access devices. Your apartment will be *[check one]*: ☐ furnished or ☒ unfurnished.

6. **RENT AND CHARGES.** You will pay $ **585.00** per month for rent, in advance and without demand:
   ☒ at the on-site manager's office
   ☒ through our online payment site
   ☒ at **OFFICE NIGHT DROP BOX.**

Prorated rent of $ _____ is due for the remainder of *[check one]*:
☐ 1st month or ☐ 2nd month, on
_____ *(year)*. Otherwise, you must pay your rent on or before the 1st day of each month *(due date)* with no grace period. Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. If you don't pay all rent on or before the **3rd** day of the month, you'll pay an initial late charge of $ **25.00** plus a daily late charge of $ **5.00** per day after that date until paid in full. Daily late charges will not exceed 15 days for any single month's rent. We will not impose late charges until at least the third day of the month. You'll also pay a charge of $ **25.00** for each returned check or rejected electronic payment, plus initial and daily late charges until we receive acceptable payment. If you don't pay rent on time, you'll be [...]

and all remedies under state law and this Lease Contract will be authorized. If you violate the animal restrictions of paragraph 27 or other animal rules, you'll pay an initial charge of $ **100.00** per animal (not to exceed $100 per animal) and a daily charge of $ **10.00** per animal (not to exceed $10 per day per animal) from the date the animal was brought into your apartment until it is finally removed. We'll also have all other remedies for such violation.

7. **UTILITIES/SERVICES.** We'll pay for the following items, if checked:
☒ gas ☒ water ☒ wastewater ☐ electricity ☒ trash/recycling
☐ cable/satellite ☐ master antenna ☐ Internet ☒ stormwater/drainage
☐ other
You'll pay for all other utilities and services, related deposits, and any charges or fees on such utilities and services during your Lease Contract term. You must not allow any utilities (other than cable or Internet) to be cut off or switched for any reason—including disconnection for not paying your bills—until the Lease Contract term or renewal period ends. If a utility is submetered or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state agency rules. If a utility is individually metered, it must be connected in your name and you must notify the utility provider of your move-out date so the meter can be timely read. If you delay getting it turned on in your name by lease commencement or cause it to be transferred back into our name before you surrender or abandon the apartment, you'll be liable for a $ _____ charge (not to exceed $50 per violation), plus the actual or estimated cost of the utilities used while the utility should have been connected in your name. If you are in an area open to competition and your apartment is individually metered, you may choose or change your retail electric provider at any time. If you qualify, your provider will be the same as ours, unless you choose a different provider. If you choose or change your provider, you must give us written notice. You must pay all applicable provider fees, including any fees to change service back into our name after you move out.

8. **INSURANCE.** *Our insurance does not cover the loss of or damage to your personal property.* You are *(check one)*:
☐ required to buy and maintain renter's or liability insurance *(see attached addendum)*, or
☐ not required to buy renter's or liability insurance.
*If neither is checked, insurance is not required but is still strongly recommended. If not required, we urge you to get your own insurance for losses due to theft, fire, water damage, pipe leaks and other similar occurrences. Renter's insurance does not cover losses due to a flood. Information on renter's insurance is available from the Texas Department of Insurance.*

9. **SECURITY DEVICES. What We Must Provide.** Texas law requires, with some exceptions, that we must provide at no cost to you when occupancy begins: (1) a window latch on each window; (2) a doorviewer (peephole) on each exterior door; (3) a pin lock on each sliding door; (4) either a door handle latch or a security bar on each sliding door; (5) a keyless bolting device (deadbolt) on each exterior door; and (6) either a keyed doorknob lock or a keyed deadbolt lock on one entry door. Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done either before you move in or within 7 days after you move in, as required by statute. If we fail to install or rekey security devices as required by law, you have the right to do so and deduct the reasonable cost from your next rent payment under Section 92.165(1), Texas Property Code.

**What You Are Now Requesting.** Subject to some limitations, under Texas law you may at any time ask us to: (1) install one keyed deadbolt lock on an exterior door if it does not have one; (2) install a security bar on a sliding glass door if it does not have one; and (3) change or rekey locks or latches. We must comply with those requests, but you must pay for them. Subject to statutory restrictions on what security devices you may request, you are now requesting us to install or change at your expense:

_____
_____
*If no item is filled in, then you are requesting none at this time.*

**Payment.** We will pay for missing security devices that are required by statute. You will pay for: (1) rekeying that you request (except when we failed to rekey after the previous resident moved out); and (2) repairs or replacements due to misuse or damage by you or your family, occupants, or guests. You must pay immediately after the work is done unless state statute authorizes advance payment. You also must pay for additional or changed security devices you request, afterward, at our option.

EXHIBIT

A

**38. MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the Lease Contract term or renewal period ends unless all rent for the entire Lease Contract term or renewal period is paid in full. Early move-out may result in reletting charges and acceleration of future rent under paragraphs 11 and 32. You're prohibited by law from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must surrender or abandon the apartment before the 30-day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

**39. CLEANING.** You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges—including charges for cleaning carpets, draperies, furniture, walls, etc. that are soiled beyond normal wear (that is, wear or soiling that occurs without negligence, carelessness, accident, or abuse).

**40. MOVE-OUT INSPECTION.** You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

**41. SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** You'll be liable for the following charges, if applicable: unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, accident, or abuse, including stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the apartment and is missing; replacing dead or missing alarm or detection device batteries at any time; utilities for repairs or cleaning; trips to let in company representatives to remove your telephone, Internet, or television services or rental items (if you so request or have moved out); trips to open the apartment when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or rekeying unauthorized security devices or alarm systems; agreed reletting charges; packing, removing, or storing property removed or stored under paragraph 13; removing or booting illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security-alarm charges

unless due to our negligence; animal-related charges under paragraphs 6 and 27; government fees or fines against us for violation (by you, your occupants, or guests) of local ordinances relating to alarms and detection devices, false alarms, recycling, or other matters; late-payment and returned-check charges; a charge (not to exceed $100) for our time and inconvenience in our lawful removal of an animal or in any valid eviction proceeding against you, plus attorney's fees, court costs, and filing fees actually paid; and other sums due under this Lease Contract.

You'll be liable to us for: (1) charges for replacing all keys and access devices referenced in paragraph 5 if you fail to return them on or before your actual move-out date; (2) accelerated rent if you have violated paragraph 32; and (3) a reletting fee if you have violated paragraph 11.

**42. DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.** We'll mail you your security deposit refund (less lawful deductions) and an itemized accounting of any deductions no later than 30 days after surrender or abandonment, unless statutes provide otherwise.

You have *surrendered* the apartment when: (1) the move-out date has passed and no one is living in the apartment in our reasonable judgment; or (2) apartment keys and access devices listed in paragraph 5 have been turned in to us—whichever date occurs first.

You have *abandoned* the apartment when all of the following have occurred: (1) everybody appears to have moved out in our reasonable judgment; (2) clothes, furniture, and personal belongings have been substantially removed in our reasonable judgment; (3) you've been in default for non-payment of rent for 5 consecutive days, or water, gas, or electric service for the apartment not connected in our name has been terminated or transferred; and (4) you've not responded for 2 days to our notice left on the inside of the main entry door, stating that we consider the apartment abandoned. An apartment is also "abandoned" 10 days after the death of a sole resident.

Surrender, abandonment, or judicial eviction ends your right of possession for all purposes and gives us the immediate right to: clean up, make repairs in, and relet the apartment; determine any security deposit deductions; and remove property left in the apartment. Surrender, abandonment, and judicial eviction affect your rights to property left in the apartment (paragraph 13), but do not affect our mitigation obligations (paragraph 32).

## Signatures, Originals and Attachments

**43. ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, each with original signatures—one for you and one or more for us. Our rules and community policies, if any, will be attached to the Lease Contract and given to you at signing. When an Inventory and Condition form is completed, both you and we should retain a copy. The items checked below are attached to and become a part of this Lease Contract and are binding even if not initialed or signed.

☐ Access Gate Addendum
☐ Additional Special Provisions
☐ Allocation Addendum for: ☐ electricity ☐ water ☐ gas ☐ central system costs ☐ trash/recycling ☐ cable/satellite ☐ stormwater/drainage ☐ services/government fees
☐ Animal Addendum
☒ Apartment Rules or Community Policies
☐ Asbestos Addendum (if asbestos is present)
☒ Bed Bug Addendum
☐ Early Termination Addendum
☐ Enclosed Garage, Carport or Storage Unit Addendum
☐ Intrusion Alarm Addendum
☒ Inventory & Condition Form
☐ Lead Hazard Information and Disclosure Addendum
☐ Lease Contract Guaranty (_____ guaranties, if more than one)
☐ Legal Description of Apartment (optional, if rental term longer than one year)
☐ Military SCRA Addendum
☒ Mold Information and Prevention Addendum
☒ Move-Out Cleaning Instructions
☐ Notice of Intent to Move Out Form
☐ Parking Permit or Sticker (quantity: _____ )
☐ Rent Concession Addendum
☐ Renter's or Liability Insurance Addendum
☐ Repair or Service Request Form
☐ Satellite Dish or Antenna Addendum
☐ TCEQ Tenant Guide to Water Allocation

You are legally bound by this document. Please read it carefully.

Before submitting a rental application or signing a Lease Contract, you may take a copy of these documents to review and/or consult an attorney.

Additional provisions or changes may be made in the Lease Contract if agreed to in writing by all parties.

You are entitled to receive an original of this Lease Contract after it is fully signed. Keep it in a safe place.

*Resident or Residents (all sign below)*

Elma Thomas       2-10-14
           Date signed

_____
           Date signed

_____
           Date signed

_____
           Date signed

*Owner or Owner's Representative (signing on behalf of owner)*

*Address and phone number of owner's representative for notice purposes*

**1810 E. PETERS COLONY RD**


EXHIBIT A



Walker Co. Housing Authority

| HOME | ABOUT HAWC | PROGRAMS | FAQ'S | PUBLIC RELATIONS | CONTACT US |

## Housing Choice Voucher FAQ's

### WHAT IS THE HOUSING CHOICE VOUCHER PROGRAM (SEC 8)?

The Housing Choice Voucher (HCV) Program provides housing assistance for qualified low-income families in the rental market. Voucher holders are able to select a unit from the private rental market. Program participants pay no more than 30% of their monthly adjusted income towards rent and utilities. The housing assistance payment subsidizes the balance of the rent to the property owner.

### HOW CAN I BECOME PART OF THIS PROGRAM?

Eligibility for a HCV voucher is determined by the Housing Authority of Walker County (HAWC) based on the total annual gross income and family size and is limited to U.S. citizens and specified categories of non-citizens who have eligible immigration status. The family's income may not exceed 50% of the area median income. Median income levels are published by HUD and vary by location. During the application process, the HAWC will collect information on family income, assets and family composition. The HAWC will verify this information and will use the information to determine program eligibility. If it is determined that your family is eligible, your application status will be upgraded from the pending status to the eligible status. When your name is next on the waiting list, the HAWC will contact you and you will be issued a voucher.

### WHEN CAN I APPLY FOR ASSISTANCE?

When a date is established on when we will accept applications for the section 8 program, the HAWC will post an advertisement in the classified section of the Daily Mountain Eagle newspaper (for up to one week) which covers the entire Walker County area. We will also have it posted on our bulletin board in our lobby and it will be announced on our telephone greeting which may be heard upon calling our office at your convenience. In addition, we will have it posted on this website. Be sure to check back at your convenience.

### WHERE CAN I LIVE?

The HAWC covers the entire Walker County area. Once you are issued a section 8 voucher, you may search the private rental market anywhere in Walker County for a housing unit that is decent, safe and sanitary according to the Housing Quality Standards (HQS) established by HUD and the HAWC.

### WHAT HAPPENS AFTER I LOCATE A RENTAL UNIT?

When you have found a suitable unit and the owner agrees to lease the unity to your family under the housing choice voucher program, the HAWC will inspect the unit to assure that meets the Housing Quality Standards (HQS) guidelines. After the unit passes the HQS inspection and the rent has been approved, the landlord and the tenant enter into a lease agreement for an initial term of one year. The HAWC and the landlord sign a Housing Assistance Payments Contract (HAP) through which the rent is assisted on your behalf. You will be responsible for the monthly payment of the difference between the total rent and the housing assistance payment.

### WHAT IF I NEED TO MOVE? CAN I CONTINUE TO RECEIVE THIS ASSISTANCE?

The Housing Choice Voucher Program is designed to allow families to move without the loss of rental assistance. We realize that a family's housing needs change over time for various reasons such as job locations, changes in family size, etc. Moves are allowed as long as the proper process is followed. Your Section 8 Coordinator will be happy to walk you through the process should this situation arise. You must live in the jurisdiction of the current housing authority for at least 12 months to be eligible to transfer under the "portability" option. A family that wishes to move to another housing authority's jurisdiction must consult with the housing authority that currently administers its rental assistance to verify the procedures for moving. Failure to follow the proper process may result in the family forfeiting their voucher.

### If the unit I want to rent is too expensive, can I pay the difference to the landlord on the side?

No. To pay the landlord extra or additional monies on the side is fraud. This would be the landlord committing fraud and the family committing fraud. Both parties would be terminated from the program and may be prosecuted.

---

Copyright 2012 by SACS Software

Exhibit B

Elma Thomas
1810 S. Peters Colony
Apt. # G506
Carrollton, Texas 75007

FOREVER USA
FOREVER USA
FOREVER USA

NORTH TEXAS
DALLAS T
OCT 201
DALLAS TX 75260

OCT 15 2015
MPO WINGO JR

OCT 15 2015
DALLAS TX 75260 9761

2nd Court of Appeals
401 W. Belknap
Fort Worth, TX 76102

75102151301

RECEIVED
OCT 2 0 2015
COURT OF APPEALS
SECOND DISTRICT OF TEXAS
DEBRA SPISAK, CLERK